UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHAEL E. LAHOOD and ANNETTE M. WHITE LAHOOD, | ) ) ) | |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| | ) | |
| RICHARD J. LAHOOD and FLLZ, LLC, | ) ) | |
| Debtor-Appellant, | ) | Adv. No. 07-8156 |
| | ) | |
| v. | ) ) | |
| CHARLES E. COVEY, Trustee, | ) ) | Civil No. 09-1264 |
| Appellee. | ) | |

| | | |
|---|---|---|
| HEARTLAND BANK AND TRUST COMPANY, | ) ) ) | |
| Plaintiff-Appellant, | ) | Adv. No. 07-8156 |
| | ) | |
| v. | ) ) | |
| CHARLES E. COVEY, Trustee, RICHARD J. LAHOOD, and FLLZ, L.L.C., | ) ) ) ) | Civil No. 09-1265 |
| Defendants-Appellees. | ) | |

## **ORDER**

This matter is now before the Court on Appellants Richard LaHood ("Richard") and FLLZ, LLC's Appeal from the Order of the Bankruptcy Court granting summary judgment in favor of the Trustee, as well as Appellant Heartland Bank and Trust Company's ("Heartland") appeal from the Order of the Bankruptcy Court granting in part and denying

in part Heartland's Motion for Summary Judgment. For the reasons stated herein, the decision of the Bankruptcy Court with respect to the appeal of Richard and FLLZ is affirmed, and the decision with respect to the appeal of Heartland is reversed and remanded for further proceedings.

**Procedural Background**

On August 9, 2007, Michael LaHood ("Michael") and his wife filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. At that time, Michael and Richard were the only members of FLLZ, a member managed, Illinois limited liability company, with each holding 50% of the shares. Prior to this time, FLLZ's principal asset was certain real estate commonly known as Route 26, East Peoria, Illinois (the "Real Estate"). Richard held a mortgage securing a mortgage note dated January 5, 2006, in the original principal amount of $427,079.49, which was made and delivered by Michael in favor of Richard and granted Richard first mortgage lien on the Real Estate. The mortgage note was further secured by a Security Agreement, dated January 5, 2006, executed by Michael in favor of Richard. At the time Michael filed his petition, Richard was owed $427,079.49 in principal plus interest.

On October 4, 2007, Richard executed a Declaration of Dissolution of FLLZ without consulting the Trustee or seeking the approval of the Bankruptcy Court. The same day, Richard caused FLLZ to execute two deeds, one conveying one-half interest in the Real Estate to himself and the other conveying a one-half interest in the Real Estate to Michael. Heartland is a creditor of Michael and claims that a lien in its favor attached to Michael's 50% membership interest in FLLZ as a result of a Judgment by Confession and Citation to Discover Assets on March 20, 2007.

The Trustee and Heartland argued that the distribution of the FLLZ Real Estate to Richard and Michael on October 4, 2007, was improper because it violated the automatic stay provisions. This argument was predicated on the suggestion that the Trustee, having stepped into the shoes of Michael as the debtor, had a right to participate in the winding-up of FLLZ. Richard and FLLZ argued that Michael was wrongfully dissociated from FLLZ upon filing the petition, making the distribution proper.

Heartland filed a Motion for Summary Judgment on its Complaint to determine the validity, priority, and extent of liens in the underlying adversary proceeding. On February 6, 2008, the Trustee and Heartland entered into a compromise, stipulating that Heartland's lien is valid and perfected as to 80% of the value of the estate's 50% membership interest in FLLZ and that Heartland is entitled to 80% of the proceeds of the winding-up of FLLZ, with the remaining 20% of the proceeds going to the estate. Based on a May 15, 2008, appraisal, the fair market value of the Real Estate was $1,180,000. This compromise was not accepted by the Bankruptcy Court.

In this appeal, Heartland asserts that a valid lien attached to Michael's interest in FLLZ after it served a citation to discover assets on him on March 20, 2007, pursuant to 735 ILCS 5/2-1402(m). On March 19, 2009, the Bankruptcy Court found against Richard and FLLZ, concluding that Michael's dissociation from FLLZ was not wrongful under the Operating Agreement, vesting the Trustee with the right to participate in the winding-up of FLLZ. Furthermore, the Bankruptcy Court found that under state law and the terms of the Operating Agreement, creditors must be paid first before any distribution of property to the Members. As a creditor holding a first mortgage lien, Richard was entitled to payment prior to any distribution of the Real Property. The Bankruptcy Court also concluded that the

distribution was part of a plan by Richard to obtain property of FLLZ to the detriment of the bankruptcy estate and was therefore in violation of the automatic stay. With respect to Heartland, the Bankruptcy Court held that Heartland's lien on Michael's membership interest was invalid because the charging order procedure described in § 30-20(e) of the LLC Act is the exclusive remedy for a creditor seeking to attach or enforce a judgment against the interest of a member in an Illinois limited liability company.

These appeals follow.

## Jurisdiction and Standard of Review

This Court has jurisdiction to review the decision of the Bankruptcy Judge pursuant to 28 U.S.C. § 158(a). District courts are to apply a dual standard of review when considering a bankruptcy appeal. The findings of fact of the Bankruptcy Judge are reviewed for clear error, while the conclusions of law are reviewed *de novo*. In re Midway Airlines, 383 F.3d 663, 668 (7th Cir. 2003); In re Smith, 286 F.3d 461, 465 (7th Cir. 2002); In re Yonikus, 996 F.2d 866, 868 (7th Cir. 1993); In re Ebbler Furniture and Appliances, Inc., 804 F.2d 87, 89 (7th Cir. 1986); see also, Bankruptcy Rule 8013 (West 1995).

## Discussion

I. <u>Appeal by Richard LaHood and FLLZ</u>

Richard and FLLZ appeal raising several interrelated issues: (1) the Bankruptcy Court erred in finding that Michael was not a wrongfully dissociated member of FLLZ at the time the Petition was filed; (2) the Bankruptcy Court erred in finding that the Trustee has a right to participate in the winding up of FLLZ; (3) the Bankruptcy Court erred in finding that the Real Estate was not properly distributed on October 4, 2007; (4) the Bankruptcy Court erred in concluding that the post-petition conveyance by FLLZ to

Michael was in violation of the automatic stay and void; and (5) the Bankruptcy Court erred in ruling on "merger" as it had not been briefed.

    A.  Wrongful Dissociation

Richard and FLLZ take the position that under the Illinois Limited Liability Company Act, 805 ILCS § 180/1-1 et seq. (hereinafter the"LLC Act"), as well as the terms of the FLLZ Operating Agreement, Michael dissociated from FLLZ on August 9, 2007, when he filed his Petition. 805 ILCS § 180/35-35(7)(A). Section 180/35-55(b) of the LLC Act then provides that if a member is dissociated from an LLC, the member's right to participate in the management and conduct of the company's business terminates with the exception of participating in the "winding up" of the company's business so long as the dissociation was not wrongful; the member ceases to be a member and is treated the same as a transferee of a member.

Richard and FLLZ contend that Michael's dissociation was wrongful. Under the LLC Act, dissociation is wrongful only if it is in breach of an express provision of the Operating Agreement. 805 ILCS § 180/35-50(b). Richard and FLLZ cite § 6.01 of the Operating Agreement, which provides in relevant part:

> No Member . . . may sell, assign, transfer, give, exchange, pledge, or otherwise dispose of any Units or any interest therein now held or hereafter acquired by him (whether voluntary, involuntary, or by operation of law) without first giving written notice thereof ("Notice of Proposed Transfer") to the Company and otherwise complying with the notice procedures and other terms and conditions of this Article VI.

Similarly, § 6.05 of the Operating Agreement states that an assignee of a membership interest becomes a substituted Member entitled to all the rights of a Member only if all of the other Members consent in writing to the substitution. In essence, they assert that

Michael voluntarily transferred his interest to the bankruptcy estate by operation of law without giving the notice required under the Operating Agreement, thereby acting in breach of an express provision and making his dissociation wrongful.

The Bankruptcy Court properly noted that Article IV of the Operating Agreement, which contains both §§ 6.01 and 6.05, addresses voluntary transfers by a member. The transfer at issue here was not this type of voluntary transfer, but rather a transfer that was compelled by operation of law, which is covered by Article VIII of the Operating Agreement. Section 8.01 provides that where a member files a petition for bankruptcy, the company has the option to purchase all or any part of the units owned by the member at a stipulated price.

Based on the existence of a separate article addressing transfers by operation of law, the Bankruptcy Court found that the specific notice and consent provisions relied on by Richard and FLLZ simply do not apply under the facts of this case. However, § 6.01 clearly indicates that the notice and offer provisions apply to any attempt to "sell, assign, transfer, give, exchange, pledge, or otherwise dispose of any Units or any interest therein now held or hereafter acquired by him (whether voluntary, involuntary, or by operation of law) . . . " This suggests that the requirements apply whether the assignment was voluntary, involuntary, or by operation of law. Yet this does not necessarily mean that the Bankruptcy Court's holding was erroneous.

Sections 541(c)(1)(A)-(B) of the Bankruptcy Code provide in relevant part:

> [A]n interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law . . . that restricts or conditions transfer of such interest by the debtor; or that is conditioned on the insolvency or financial condition

> of the debtor, on the commencement of a case under this
> title, or on the appointment of or taking possession by a
> trustee in a case under this title or a custodian before such
> commencement, and that effects or gives an option to effect
> a forfeiture, modification, or termination of the debtor's
> interest in property.

According to the Trustee, § 541(c) trumps any contrary provisions in the Operating Agreement, precluding Michael's alleged breach of the notice and offer provisions from rendering his dissociation wrongful.

This issue appears to present a case of first impression in this Circuit. In fact, there is precious little case law addressing this precise question in any jurisdiction. In In re Ehmann, 319 BR 200, 206 (D.Ariz. 2005), the bankruptcy court held that pursuant to § 541(c), any interest of the debtor becomes property of the estate regardless of any agreement that would otherwise restrict or condition transfer of the debtor's interest. As all of the provisions of the operating agreement relied on by the company "constitute conditions and restrictions upon the member's transfer of his interest . . . Code § 541(c)(1) renders those restrictions inapplicable." Id.

Similarly, in In re Klingerman, 388 BR 677, 678-79 (E.D.N.C. 2008), the bankruptcy court cited Ehmann and distinguished a contrary result in In re Garrison-Ashburn, LC, 253 BR 700 (Bnkrtcy.E.D.Va. 2000), in holding that § 541(c) vests the bankruptcy estate with all of the debtor's interest notwithstanding applicable non-bankruptcy law or contractual provisions effecting a modification or termination of the debtor's interest upon filing. As a result, the bankruptcy estate received the debtor's economic and non-economic rights and interests, including the right to dissolution, wind up, and liquidation. Id.

In In re Daugherty Construction, Inc., 188 BR 607, 611 (Bnkrtcy.D.Neb. 1995), the bankruptcy court held that provisions of an LLC agreement treating the filing of a petition in bankruptcy as a dissolution and termination of the debtor were not enforceable under the Supremacy Clause because they were in direct conflict with specific provisions of the Bankruptcy Code. Accordingly, such provisions "are not enforceable in a Chapter 11 bankruptcy case." Id.

Even Garrison-Ashburn, which ultimately concluded that the estate only had the rights of an assignee, acknowledged that § 541(a) "clearly encompasses all of [the debtor's] interest in [the company], whatever that interest may be, whether economic or noneconomic." 253 BR at 707-08. That section of the Bankruptcy Code also "makes plain that no restriction on the transfer of any interest of a debtor – whether it arises from the operative documents themselves or from applicable nonbankruptcy law – prevents an interest from becoming property of the estate." Id. As a result, all of the rights and privileges that the debtor had immediately prior to filing became the property of the bankruptcy estate. Id. Moreover, the reasoning for the limitation on the estate's rights found in Garrison-Ashburn was based on readily distinguishable facts, as Richard and FLLZ are attempting to use the provisions of the Operating Agreement to deprive the estate of valuable assets in a way that would offend the Congressional intent behind § 541(c).

The Court finds the reasoning in these cases to be persuasive. Accordingly, the Court concludes that the provisions of the Operating Agreement purporting to place limitations or restrictions on Michael's interest as a result of his bankruptcy filing are unenforceable in this proceeding. Richard and FLLZ therefore cannot use the alleged

violation of §§ 6.01 and 6.05 of the Operating Agreement to establish that Michael's dissociation was wrongful, and the Bankruptcy Court's holding that Michael's dissociation was not wrongful was not in error.

B.   Winding Up

Richard and FLLZ's disagreement with the Bankruptcy Court's conclusion that the Trustee has a right to participate in the winding up of FLLZ's affairs is based on their assertion that Michael's dissociation from the company was wrongful.  As the Court has now rejected that argument and found that Michael's dissociation was not wrongful, this basis for appeal lacks merit and warrants no further discussion.

C.   Proper Distribution

The next appeal by Richard and FLLZ concerns the finding by the Bankruptcy Court that the distribution of the Real Estate was improper based on the failure to apply the assets to discharge the claims of creditors before distributing to members under the LLC Act.  Specifically, the Bankruptcy Court found that Richard should have caused FLLZ to first pay him $427,079.49 plus interest as a creditor in satisfaction of the Mortgage, and only then could have distributed any remaining property to the members.

Section 35-4(c) of the LLC Act provides:

> A person winding up a limited liability company's business may preserve the company's business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the company's business, dispose of and transfer the company's property, discharge the company's liabilities, distribute the assets of the company pursuant to Section 35-10, settle disputes by mediation or arbitration, and perform other necessary acts.

805 ILCS § 180/35-4(c).  Section 35-10(a) then provides that in winding up an LLC's business, "the assets of the company must be applied to discharge its obligations to creditors, including members who are creditors.  Any surplus must be applied to pay in money the net amount distributable to members in accordance with their right to distributions under subsection (b) of this Section."

Additionally, § 12.03(a) of the Operating Agreement directs that when the company is dissolved, creditors, including members who are creditors, have first priority for distribution whether the assets are distributed in kind or by converting them to cash and distributing the proceeds thereof.   Distributions to members in satisfaction of the company's obligations due and owing under § 4.01 and Article IX are next in line, followed by proportional distributions to members having positive capital account balances.  Operating Agreement §§ 12.03(b)-(c).

The argument by Richard and FLLZ on this issue is half-hearted and can best be characterized as a throw-away argument.  They take a portion of § 12.03 of the Operating Agreement out of context, ignoring the established priority for distribution in racing to their conclusion that an in kind distribution was permissible under the terms of the Operating Agreement, before summarily asserting without citation to any authority that Richard was not a creditor of FLLZ.  Perhaps this is because there is really no credible basis for an argument that flies in the face of the very document that they purport to rely on.  This kind of perfunctory and undeveloped legal argument is utterly insufficient, and it is well-settled that responses of this type result in the waiver of the argument.  *See*, Finance Investment Co. v. Geberit AG, 165 F.3d 526, 1998 WL 890372, at *1 (7th Cir. Dec. 23, 1998) (finding a perfunctory and undeveloped argument

to be waived); Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection, 344 F.3d 680, 689 n.6 (7th Cir. 2003); Indurante v. Local 705, International Brotherhood of Teamsters, 160 F.3d 364, 366 (7th Cir. 1998); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 668 (7th Cir. 1998), cert. den., 119 S.Ct. 890 (1999).

      D.    Automatic Stay

Richard and FLLZ next challenge the Bankruptcy Court's finding that Richard's actions in distributing the Real Estate violated the automatic stay. "It is well settled that the automatic stay has a dual purpose: it temporarily relieves the debtor of financial hardship and collection activity while simultaneously preventing creditors from improving their positions relative to one another." In re Mid-City Parking, Inc., 332 BR 798, 815 (Bnkrtcy. N.D.Ill. 2005); *see also*, Martin-Trigona v. Champion Federal Savings and Loan Association, 892 F.2d 575, 577 (7th Cir. 1989); Winters by & Through McMahon v. George Mason Bank, 94 F.3d 130, 133, 135 (4th Cir.1996); Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3rd Cir.1991); Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3rd Cir.1982); Commerzanstalt v. Telewide Sys., 790 F.2d 206, 207 (2nd Cir.1986); Farley v. Henson, 2 F.3d 273, 274 (8th Cir.1993); H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97. Proceedings conducted in violation of the automatic stay are generally void and without legal effect. ICC v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991).

Here, it is undisputed that Michael filed his petition in bankruptcy on August 9, 2007, and the automatic stay went into effect. It is further undisputed that Richard executed the Declaration of Dissolution of FLLZ and two deeds conveying the interest in

the Real Estate to himself and Michael on October 4, 2007, without consulting the Trustee or seeking the approval of the Bankruptcy Court. Richard and FLLZ argue that prior to the distribution, the Real Estate was not an asset of the bankruptcy estate, but rather an asset of FLLZ.

While several of the provisions of § 362(a) are couched in terms of the assets of the estate or the debtor, subsection (6) is stated much more broadly and refers to claims against the debtor rather than assets of the estate. "[A]ny act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" violates the automatic stay provisions pursuant to 11 U.S.C. § 362(a)(6). Richard and FLLZ admit that Richard held a Mortgage that was secured by a first mortgage lien on FLLZ's Real Estate and that his Mortgage secures a debt in the original amount of $427,079.49 owed by Michael to Richard. Stipulation of Undisputed Facts [Bnkrtcy. Doc. 47] at ¶¶ 6-9. As such, it is difficult to suggest in good faith that Richard did not have a claim against Michael that arose before the filing of the bankruptcy petition. As Richard and FLLZ further acknowledge that the execution of the deeds was done to effect a merger so that the Mortgage would be payable solely from Michael's interest in the Real Estate, it is equally difficult to suggest in good faith that Richard's actions were not an act to collect or recover his claim against Michael and maximize his recovery at the expense of the bankruptcy estate. Thus, the Court finds no error in the Bankruptcy Court's determination that Richard's actions violated the automatic stay and are void.

      E.    Merger

Richard and FLLZ suggest that the Bankruptcy Court erred in addressing the doctrine of merger, as it had not yet been briefed. However, they had clearly raised the

issue in their Joint Memorandum of Law [Bnkrtcy.Doc. 58 at 8-9], concluding that Richard's Mortgage had merged with his membership interest pursuant to the doctrine of merger and summarily stating that the issue was not before the court at that time. The Bankruptcy Court disagreed, finding that it was necessary to determine whether this theory was correct in order to address the remaining issues. Richard and FLLZ, who initially raised the issue of merger, cannot reasonably suggest that they were unaware of the issue or lacked an opportunity to address the issue.

"A party may not move for summary judgment on an issue and take a 'calculated risk' that the issue it failed to brief will not be dispositive." Sethness-Greenleaf, Inc. V. Green River Corp., 1992 WL 188522, at *7 (N.D.Ill. July 27, 1992). Accordingly, any objection on this basis is without merit.

    II.    <u>Appeal by Heartland</u>

Heartland asserts that a valid lien attached to Michael's interest in FLLZ after it served a citation to discover assets on him on March 20, 2007, pursuant to 735 ILCS 5/2-1402(m). Section 5/2-1402(m) provides:

> The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor as follows:
>
> (1) When the citation is directed against the judgment debtor, upon all personal property belonging to the judgment debtor in the possession or control of the judgment debtor or which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation.
>
> (2) When the citation is directed against a third party, upon all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and

comes into the possession or control of the third party to the
time of the disposition of the citation.

The lien established under this Section does not affect the
rights of citation respondents in property prior to the service
of the citation upon them and does not affect the rights of
bona fide purchasers or lenders without notice of the citation.
The lien is effective for the period specified by Supreme
Court Rule.

The Bankruptcy Court found that the general rule in § 5/2-1402(m) was trumped by § 30-20 of the LLC Act, as it provides the exclusive mechanism for impressing a lien upon a judgment debtor's interest in an Illinois LLC. Section 30-20 states:

(a) On application by a judgment creditor of a member of a
limited liability company or of a member's transferee, a court
having jurisdiction may charge the distributional interest of
the judgment debtor to satisfy the judgment. The court may
appoint a receiver of the share of the distributions due or to
become due to the judgment debtor and make all other
orders, directions, accounts, and inquiries the judgment
debtor might have made or which the circumstances may
require to give effect to the charging order.

(b) A charging order constitutes a lien on the judgment debtor's
distributional interest. The court may order a foreclosure of a lien on
a distributional interest subject to the charging order at any time. A
purchaser at the foreclosure sale has the rights of a transferee.

(c) at any time before foreclosure, a distributional interest in
a limited liability company that is charged may be redeemed:

    (1) by the judgment debtor;

    (2) with property other than the company's
    property, by one or more of the other
    members; or

    (3) with the company's property, but only if
    permitted by the operating agreement.

(d) This Act does not affect a member's right under
exemption laws with respect to the member's distributional
interest in a limited liability company.

> (e) This Section provides the exclusive remedy by which a judgment creditor of a member or a transferee may satisfy a judgment out of the judgment debtor's distributional interest in a limited liability company.

805 ILCS 180/30-20. This dispute essentially presents another issue of first impression on which there is very little authority that is even marginally relevant.

Heartland relies on Dowling v. Chicago Options Associates, Inc., 365 Ill.App.3d 341 (1st Dist. 2006), for the proposition that it approved the citation process to perfect a judicial lien on the debtor's membership interest in an LLC. However, Dowling is not dispositive, as it does not address the question presented in this case. Id., at 354. There was no challenge to whether a valid and enforceable lien attached with the service of the citation to discover assets, and the only issue was whether a public sale by the sheriff was required. Id. Section 30-20 of the LLC Act was simply not addressed.

Although also not completely analogous, the Court finds the opinion in Bobak Sausage Co. v. Bobak Orland Park, Inc., 2008 WL 4814693, at *4-5 (N.D.Ill. 2008), to be instructive. The debtor in Bobak held a 30% interest in an LLC that was determined to be relatively illiquid as a result of the substantial limitations on the alienability of full membership interests contained in the LLC's operating agreement. Id. Given the lack of a ready market for this type of an asset, the district court concluded that the general provision in the first sentence of § 2-1402(e) of the Illinois Code of Civil Procedure that property delivered up by the debtor shall be delivered to the sheriff to be sold may give way to another method that is more appropriate to liquidate the property where the debtor's property cannot readily be delivered for sale pursuant to the second sentence of § 2-1402(e). Id., at *4. Like § 30-20 of the LLC Act, the second sentence of § 2-

1402(e) was simply not at issue in Dowling. The court found the alternative provision in sentence two of § 2-1402(e) to be in accord with § 30-20 of the LLC Act, finding:

> Section 30-20 provides the "exclusive remedy" of a judgment creditor of a LLC member seeking to satisfy a judgment via the member's interest. 805 ILCS 180/30-20(e). A court with jurisdiction "may charge the distributional interest of the judgment debtor to satisfy the judgment." Id. 180/30-20, 301 Ill.Dec. 731, 847 N.E.2d 741(a). The statute defines "distributional interest" as a member's rights to monetary distributions from the LLC. Id. 180/1-5, 301 Ill.Dec. 731, 847 N.E.2d 741. "A charging order constitutes a lien on the judgment debtor's distributional interest." Id. 180/30-20, 301 Ill.Dec. 731, 847 N.E.2d 741(b). Section 180/30-20(b) further provides that a court may order a foreclosure on that lien at any time. Id. Courts in other states with similar LLC statutes have interpreted this provision to allow a court to order the distributional interest charged with the payment of a judgment. *See* Herring v. Keasler, 150 N.C.App. 598, 600-01, 563 S.E.2d 614, 615-16 (2002) (holding that forced sale of a judgment debtor's membership interest was prohibited under North Carolina's LLC statute and that charging the distributional interest was the proper remedy). Section 30-20 also allows a court to appoint a receiver for the distributional interest. 805 ILCS 180/30-20(a). Though the Illinois Supreme Court has not spoken on the matter, these provisions seems to contradict Dowling' s assertion that the only permissible method of disposal for an interest in an LLC is a public sale administered by the sheriff.

Id., at *5. *See also*, In re Pischke, 11 BR 913 (Bankrtcy.E.D.Va. 1981) (citing state court cases holding that creditors cannot levy attachment or execution on a partner's right in specific partnership property or limited partnership interest but must first obtain a judgment and pursue the statutory remedy of seeking a charging order.)

Here, Michael's interest in FLLZ was also largely illiquid, with no readily available market for sale given the restrictions on attempts to transfer membership interest contained in the Operating Agreement, and a public sale by the sheriff would clearly not

- 16 -

be a very effective method to liquidate his interest. Heartland clearly obtained a judgment against Michael but made no effort to obtain a charging order under § 30-20.

There is no dispute that the service of a citation imposes a lien on the judgment debtor's personal property under Illinois law. Bobak, 2008 WL 4814693, at *5, *citing* 735 ILCS 5/2-1402(m)(1); City of Chicago v. Air Auto Leasing Co., 297 Ill.App.3d 873 (1998). Heartland correctly notes that Bobak does not stand for the proposition that a charging order is the only way to impose a lien against a member's interest in an LLC and that Dowling at least suggests that liens may also be imposed under the auspices of § 2-1402. Acknowledging that Downing and Bobak arguably stand for the proposition that liens against a member's interest in an LLC may be created either through the service of a citation or by obtaining a charging order, the Court must respectfully disagree with the Bankruptcy Court's conclusion that Heartland could not have created a lien via the service of the citation in March 2007. Whether the citation contained the requisite statutory language to create a valid lien and otherwise complied with the Illinois' citation statute does not appear to have been addressed by the Bankruptcy Court and must be addressed on remand.

If the Bankruptcy Court finds in favor of Heartland on these questions, as well as any other previously unaddressed issues that may be necessary in this regard, the question will then logically become how the lien will be treated in terms of satisfaction or remedy. The decision in Pischke relied on a provision similar to § 30-20 under Virginia law in concluding that "a charging order supersedes the general procedure for execution on intangibles." 11 BR at 918.

> It has been stated that a charging order statute "constitute(s)
> . . . repeal by implication of any previous procedures

> designed to' reach a partner's interest in a partnership. . . .
> An analysis of this principle considered in conjunction with
> the fact that it is the creation of the lien and not its
> enforcement which is critical in the bankruptcy setting
> indicates that the better and most logical application is that
> the Virginia charging order statute . . . supersedes other
> legislation in the area concerning satisfaction of a judgment
> creditor's claim against a partner's interest in a partnership.

Id., at 917. Pischke further advises that creditors "shall obtain priority, if at all, in the sequence in which they were granted charging orders by a court of competent jurisdiction," suggesting that the failure to obtain a charging order prevents a judgment creditor from obtaining priority in terms of executing or satisfying the judgment. Id. Under this rationale, Heartland's judgment lien would not be entitled to priority absent a charging order, as § 30-20 would foreclose the possibility that any lien obtained by a citation could be an alternative to a lien obtained through a charging order in terms of being in a position to satisfy the lien or obtain a remedy. To find differently would render the "exclusive remedy" provision of § 30-20(e) meaningless.

While Heartland has not obtained a charging order at this time, Pischke indicates that it may be possible for a judgment creditor to avail themselves of the opportunity to request that the automatic stay be lifted to allow the creditor to seek a charging order from a court of competent jurisdiction. Id., at 18-19. Whether such opportunity is appropriate in this case is not before the Court and must be determined by the Bankruptcy Court in the first instance. Given the Court's finding that Heartland could have created a valid lien by serving its citation and that there is at least a theoretical possibility that a charging order may still be obtained to allow the satisfaction of any such lien, this matter must be remanded to the Bankruptcy Court for further proceedings

consistent with this opinion. The Court takes no position regarding the ultimate resolution of this issue.

## Conclusion

For the reasons stated herein, the Order of the Bankruptcy Court is AFFIRMED in Case No. 09-1264, and the portion of the Order of the Bankruptcy Court appealed is REVERSED and REMANDED in Case No. 09-1265. This matter is now TERMINATED.

ENTERED this 30th day of September, 2010.

                                                s/ Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge